Mr. Du Ponceau, *pro quer.*
Mr. Rawle, *pro def.*

---

### Lessee of JAMES GARDINER *against* JAMES WILSON.

Where after judgment in ejectment the term expires, court will direct an amendment by enlarging the term.    Aliter after great laches and delay.

A MOTION was made last March term, and a rule to show cause granted, why the plaintiff's term should not be enlarged, and a writ of possession awarded.

The ejectment was brought for 856 acres of land in Antrim township in the county of Cumberland, and at Nisi Prius on the 27th May 1773, a verdict passed for the plaintiff, and judgment was entered in September term following thereon, with this addition, " death of the lessor of the plaintiff before the day in bank suggested."    But by mistake of the prothonotary, the verdict and judgment was entered in another ejectment brought by the same plaintiff against Robert Wilson, in which there had been no trial, and consequently no *postea* to warrant

it. In April term 1783, on the motion of Mr. Wilson for the plaintiff, a rule was granted to show cause, why the record should be amended by striking out the unwarranted entries, and placing them to the proper action, which rule in the following term was made absolute. In consequence thereof, a writ of *habere facias possessionem* issued returnable to September term 1784, which had not been executed.

The motion now before the court was continued by the plaintiff's counsel, until the state of the family of the lessor of the plaintiff could be ascertained by proof. An affidavit was now produced, whereby it appeared, that the said James Gardiner died in 1773, leaving two daughters, Anne, who intermarried with James M'Mullen, who died 26th October 1784, leaving six children by her, James, Francis, Mary, Martha, French and John James M'Mullen, jun. was born in 1762, and died 5th January 1785. Francis M'Mullen was born 18th February 1770, and is now in full life. Mary M'Mullen was born 9th June 1774, and married Dr. Howes Goldsborough. Martha M'Mullen was born 21st April 1776, and the two youngest sons are still minors.

The motion was made in behalf of the surviving children of the said James M'Mullen. The said James Gardiner had also another daughter, named Martha, who married—Rees, and both died intestate and without issue. The lessor of the plaintiff made a will in writing, whereby he devised the lands in question (*inter alia*) to William Killen and George Read, esqs. his executors, in trust to pay his debts.

On the part of the defendant, an affidavit was also produced stating that improvements had been made on the lands in question, and fifty acres of land cleared thereon since the verdict, by the present possessor, (the grand-son) and Robert Wilson the son of the original defendant; and that a still house had been built thereon by the said grandson. His grandfather and father died since the verdict.

It was admitted, that at Nisi Prius at Carlisle, on the 23d May 1769, a former trial was had between the same parties for the same lands, and that the defendant obtained a verdict, on which judgment was afterwards rendered.

For the plaintiff it was insisted, that ejectments are mere fictions, and under the control of the court to serve the puposes of justice. 3 Bl. Com. 206. 2 Burr. 655. Whatever scruples courts might formerly entertain as to amendments in ejectment, they are now carried very far. 2 Burr.

1161, 1162.   A term was altered from five to ten years without consent. 2 Stra. 1272.   It was enlarged, though expired twelve years before the ejectment brought. 2 Bl.Rep. 940.   The time of the demise was altered, to prevent the operation of a fine, and it was said to be mere matter of form.   It does not exist.   It is not like a real action.   4 Burr. 2249. And in a late case, after B. R. had affirmed a judgment in ejectment in Ireland, it amended the declaration by enlarging the term, though the record had been remitted to Ireland.   Cowp. 841.

It was said, that the circumstances attending this case, warranted the court's interposition.   The lessor of the plaintiff died between the assizes and the day in bank.   The opinion then generally entertained, and the practice uniformly was, that his death abated the suit.   An eight years' war succeeded shortly afterwards, which engrossed every man's attention.   *Inter arma silent leges.*  James M'Mullen the father died in October 1784, and hence the writ of possession remained unexecuted.   His children were minors, to whom no laches is imputable, and the general apprehension of the family was, that the lessor of the plaintiff had died intestate as to the lands in question.

On the part of the defendant, the equitable discretion of the court under proper circumstances, was admitted, though the law was formerly otherwise.   1 Salk. 257.   But here has been the grossest negligence and laches, which the law will not encourage or assist.   A delay of no less than $22\frac{1}{2}$ years has intervened between the verdict and the motion for the present rule.   Though the grand children were minors, yet the estate was vested in the executors for the payments of debts.   Besides M'Mullen the father, or his son James, when he came of age in 1783, or Rees, lay under no disqualification.   The statutes of limitation once begining to run, will run on notwithstanding coverture or minority. Courts of equity will reduce a stale demand to a reasonable time though the statute of limitations be not pleaded, and make use of that as a rule in the exercise of its discretion.   1 Atky. 494.   They adopt the statute as a positive rule, and apply it by parity of reason to cases not within it.   2 Burr. 961.   And both courts of law and equity will make a strong presumption in favor of a possession of twenty-one years.   2 Atky. 67.   No writ of error shall have effect, unless brought within seven years after judgment, under the act of assembly passed 13th April 1791 § 20.   3 Dall. Laws, 99.

What  effects  has  this  inexcusable  delay  produced ?   The original defendant, believing that the plaintiff had relinquished his claim, has made provision by his will for his son Robert out of

these lands, and has followed Gardiner to the grave. Robert purchased other part of the lands from another brother, improved the whole, and has also paid the debt of nature, under a firm confidence that his son would succeed to the peaceable possession of the paternal inheritance.

The present possessor has likewise improved and built on the premises; and the rule now prayed for goes to defeat the reasonable expectations and labours of the whole family.

The former verdict for the defendant in 1769 will have weight with the court, in such a case as the present. We have reason to believe, that the last verdict was a hard one, and to effect a possession under it at this day would throw the now occupant in a much worse situation than if the plaintiff had pursued his pretentions with due and reasonable vigilance.

Yeates, J., before the reply of the plaintiff's counsel mentioned, that he was present at the trial in Carlisle in May 1773, and that the jury were kept together a great length of time without any refreshment, before they agreed; and that on the day succeeding the delivery of their verdict in court, a number of the jurors called on the judges at their chambers, and expressed great dissatisfaction with their finding, complaining that they were starved into the measure by the stiffness of one of their fellows.

*Per curiam.* Exclusive of the anecdote just given to us respecting this verdict, and the former trial, we do not apprehend, that the circumstances of this case will warrant our making the rule absolute. Here has been great and inexcusable laches and neglect, and recurrence is had to our equitable discretion for a healing remedy. In certain instances the court would interpose in directing an amendment of the nature applied for. But the maxim is, *vigilantibus et non dormientibus jura subveniunt.* Hob. 347. After so long delay, it would essentially injure the present occupant to direct a change of possession, without a new hearing. Suppose he, or his predecessors had gained a title in this length of time, from Gardiner or any other person, ought he to be prevented from showing it, before the possession is wrested from him? The plaintiff must be put to his new ejectment.

Motion denied.

Messrs. M. Levy, and J. B. M'Kean, *pro quer.*
Messrs. Ingersoll, and Tilghman, *pro def.*