UTICA,
August, 1823.

JACKSON
v.
MURRAY.

JACKSON, *ex dem.* HARRIS and others, *against* MURRAY and others.

THE SAME *against* FRARY and M'DOWELL.

*In ejectment, it is generally allowed, of course, to amend, by inserting a new demise, where the proposed lessor has a subsisting title.*

*Otherwise, where the statute of limitations have attached.*

*And where the action was for a military lot, the defendants being bona fide possessors, and the effect would have been to defeat the operation of the statutes passed April 5, 1803, (sess. 26, ch. 88, 3 Webster, 399,) and afterwards in 1813, (sess. 36, ch. 80, s. 4, 1 R. L 304,) for their protection, the amendment was refused.*

*For such an amendment would be equivalent to a new action, with a rule that it should overreach the statute.*

EJECTMENT, for *lot No.* 50, in *Mentz,* in *Cayuga* county. This lot was patented to *Callaghan,* a soldier, who died previous to *March* 27th, 1783. The cause had been once noticed for trial. The lessors claim title under the soldier's sister and heir at law. In their chain of title, there is a deed from the Sheriff of *Cayuga,* to S. *Dill,* who purchased the lot at Sheriff's sale, as the agent of *Harris,* one of the lessors, and a deed from *Dill* to *Harris.* When this latter deed was executed, some, or one of the defendants, were in possession, claiming title to the lot; though such title has never been placed on record. The defendants were *bona fide* possessors, at the time of suit brought, claiming under purchases, or contracts for purchase. *Dill's* name was not inserted as one of the lessors. And

*J. Porter,* now moved to add a demise from *him.*

*J. Platt,* contra, said it was too late to move for the addition of a new demise, after the cause had been noticed for trial. Another objection is, that *Dill* has not a subsisting title, which is certainly necessary in one applying to be made a lessor. In *Jackson* v. *Richmond,* (4 *John. Rep.* 483,) the Court say : " No person is to be made a lessor, who has no claim or pretence to a *subsisting title* or *interest* in the premises. If any person, who has once had the title, is to be made lessor, the burthen of deducing a title from him is taken from the plaintiff and thrown on the tenant, which would be unreasonable." *Dill* has parted with all his interest to *Harris ;* and he is estopped from saying otherwise, though third persons may object, that nothing passed by his conveyance.

But the great and decisive objection to a new demise, is this : the defendants were *bona fide* purchasers. As such, they come within the statute, (*sess.* 36, *ch.* 80, *s.* 2, 4, 1 *R. L.* 304-5,) intended to protect them against these lessors. It was universally supposed, for several years after

the revolution, that when the soldier died previous to the date of the patent, it would enure to the benefit of his heirs. The statute of *April 5th*, 1803,(*a*) was passed in confirmation of this idea. Here the soldier died previous to the time mentioned in the act, viz. *March 27th*, 1783, and the title vests by the patent. In the intermediate time, our statute of descents was passed.(*b*) By this act, the descent of the lot is regulated.(*c*) Thus, the unsettled state of the titles to these military lots, induced the statute of 1813, (1 *R. L.* 305, *s.* 4) requiring all actions therefor to be brought before the 1*st* day of *January*, 1823. The Court should give to this statute its full and complete effect. The plaintiff claims under the dead soldier. This is the very case contemplated by the act. The effect of the amendment sought, is to institute a new suit. It goes to a new source of title, in new parties, and a change of rights. We have vested absolute rights under the statute, as fully and entirely so, as if *Dill* and all these lessors had conveyed to us. These rights cannot be divested by an original action ; nor should they be indirectly, by adding a new demise, and giving it a relation which overreaches our rights, by incorporating it into an old action.

*Porter*, in reply. True, the defendants are *bona fide* claimants ; but, for aught that appears, the persons under whom they claim, came into possession without colour of title, and are therefore to be regarded as mere *squatters*. It is the uniform practice, in the action of ejectment, to amend by inserting a new demise, notwithstanding the lapse of years, and at almost any distance of time after the action is commenced. (*Doe* v. *Pilkington & Russell*, Burr. 2447. *Lyon* v. *Burtis et al.* 18 *John.* 510.) If, as admitted, the deed from *Dill* is inoperative, then the title is in him : and so are the cases. If a person out of possession, conveys land held adversely, such conveyance is void ; but the title remains in the grantor, so as to enable him to bring ejectment. (*Williams* v. *Jackson*, ex dem. *Tibbets et al.* 5 *John. Rep.* 489.) And if he has a mere equitable title, will not the Court allow him to be introduced as a lessor, in furtherance

UTICA,
August, 1823.

JACKSON
v.
MURRAY.

(*a*) Sess. 26, ch. 88, s. 1, 3 *Webster*, 399.
(*b*) Sess. 9, ch. 12, s. 3, 1 *Greenleaf*, 206, Feb 23, 1786.
(*c*) Sess. 26, ch. 88, s. 8, 3 *Webster*, 401.

UTICA,
August, 1823.

JACKSON
v.
MURRAY.

of justice ? It is said that this is equivalent to the commence-ment of a new suit. Far from it. We commenced our suit in good faith, and within the proper time ; and we claim the use of *Dill's* name, merely to sustain our real interests. This is promoting the justice of the case, not a lawless inter-ference with vested rights.

*Curia.* The addition of a new demise is, generally, a matter of course, where the proposed lessor has a subsisting title. (*Jackson, ex dem. Finch et al.* v. *Kough,* 1 *Caines,* 251.) But the defendants are *bona fide* possessors of a military lot. For the recovery of such a lot the statute declares that the action must have been brought before the 1st day of *Janua-ry,* 1823, and be prosecuted to effect without wilful delay, or the person claiming title shall be forever thereafter bar-red from recovering. The defendants are actual settlers upon the land under colour of *bona fide* purchases ; and there is no dispute that they are within the purview of this act of limitation.

It seems to us, that by allowing this amendment, we are in-directly depriving these defendants of all benefit under the act. The title passes to *Dill :* he releases to *Harris,* while the lot was possessed adversely by another. No title passed by this release, and *Dill* might have had ejectment. To allow this amendment, would be to introduce a new cause of action. It is like allowing a declaration to be ser-ved *de novo,* and ordering it to stand *nunc pro tunc.* The rule is well established, and has often been acted upon in the English Courts, that where the statute of limitations has at-tached, such an amendment will not be allowed. In the case of *Goff, q. t.* v. *Popplewell et al.* ( 2 *T. R.* 707-8,) the Court say, that " they would not in their discretion permit the proposed amendments to be made, which would, in effect, a-mount to a permission to bring another action, to which oth-erwise the defendants might plead the statute of limitations."

That was a *qui tam* action upon the statute of usury ; but the Court said, " there was no difference between civil and penal actions, as to amendments at common law, while all was in paper." In *Steel, q. t.* v. *Sowerby,* (6 *T. R.* 171) the-

same point was decided; and though it was ruled otherwise in *Cross* v. *Kay,* (6 *T. R.* 543) and the former decisions are placed on the ground of great delay in the plaintiff to prosecute his suit; yet *Lawrence, J.* says, " if the amendment prayed for had gone the length of introducing a new charge against the defendant, I should have thought it came too late, on account of the statute of limitations." In the case of *Maddock, q. t.* v. *Hammet et al.* (7 *T. R.* 51) this question again came up, and the Court granted the amendment, saying they did this, " though the time limited for bringing a new action had expired; in as much as the amendment prayed for was not to introduce a new substantive cause of action." And in the case of *Low, q. t.* v. *Little,* (17 *John.* 346) a majority of the Court, in a similar case, inclined against an amendment, though there had been no delay in prosecuting the suit; and they were unanimous in thinking that there could not be an amendment by introducing any new substantive cause of action. In *Lyon, ex dem. Eden & Wood,* v. *Burtis et al.* (18 *John.* 510) which was a strong case of amendment, this Court say, (*p.* 512) " it is not pretended by the defendants that any injury will be done them by the amendment, farther than to remove a mere technical objection." But, in this case, we are asked to vary the whole ground.

Here is no subsisting title in *Dill,* for the purposes of a new action. He is barred, unless we allow him to come in upon this motion to amend. (*Jackson* v. *Richmond,* 4 *John. Rep.* 483.)

Motion denied.(<i>a</i>)

(*a*) For the great liberality of the Courts in allowing amendments, before, at and after trial, in these actions of ejectment, vid. *Runn.* 226 to 234, and the cases there cited; *Adams on Eject.* 200 to 208, and the cases there cited, and at *id.* p. 202, vid. n. (6) by Mr. *Ruggles* to the American edition. Vid. also *Lessee of Samuel Howard* v. *Pollock* & *Burk,* 1 *Yeates' Rep.* (*Penn.*) 509. In this case, it was moved at *N. P.* to amend by altering the date of the demise. But *per Cur.* " We cannot entertain such motions at *nisi prius,* which is peculiarly appropriated to the trial of causes. Though great liberality is now used in ejectment cases, as to enlarging the term and confirming verdicts, where trials have been had upon the merits, it may be doubtful how far the Court would go in making an entire new

UTICA,
August, 1823.

BENTON
v.
DALE.

BENTON *against* DALE.

To entitle to treble damages and costs, in trespass under the statute, (*sess.* 36; *ch.* 56, *s.* 29, 1 *R. L* 525,) the verdict must be upon a count, or counts, under the statute, expressly; and it is not sufficient that it be upon a count upon the statute, and a general count in the same declaration.

In trespass on lands, in a court of common pleas, &c. the plaintiff, unless he recover more than $25, cannot have costs, but must pay costs to the defendant, tho' the court certify that the trespass was wilful and malicious.

And he, therefore, cannot recover costs upon his verdict, in such an action, removed here by *habeas corpus*, unless it exceed $25, though the circuit judge certify that the trespass was wilful and malicious.

The certificate of a circuit judge will not be received to entitle to treble damages and costs, in trespass under the statute, &c.

TRESPASS *quare clausum fregit*, and for cutting down and destroying the trees, underwood, &c. of the plaintiff. The lease. The old authorities (1 *Vent.* 361. 1 *Show.* 207. 2 *Barn.* 13, 154. *Contra*, *Comb.* 290. *Carth.* 178. 4 *Burr.* 2447. See 2 *Bl. Rep.* 940. 2 *Burr.* 1161. *Cowp.* 841, 4) are against such an amendment clearly, and we do *not* recollect such a motion having been made in *Pennsylvania.*" In *Lessee* of *Gardner* v. *Wilson*, (2 *Yeates*, 186,) it was said the Court would amend by enlarging the term after judgment, though it was refused after the great delay in that cause, of more than 20 years. In *Den, ex dem. Hoover*, v. *Franklin et al.* (2 *South. N. J. Rep.* 850,) the plaintiff was allowed to amend the time of the demise after non-suit; and the Court said that " a motion for an amendment might be heard at any time; and at almost any stage in the progress of a cause." And vid. *Jackson, ex dem. Young*, v. *Young*, (*ante*, 131.)

In *Doe* v. *Pilkington & Russel*, (*Burr.* 2447) an amendment in form, by altering the time of the demise, so as to avoid the statute of limitation upon a fine, the plaintiff having been delayed by injunction, was moved; and *Yates & Aston*, Justices, " thought that the plaintiff's being out of time to make a new entry, was a reason for amending, and cited the case of *The executors of the Duke of Marlborough* v. *Widmore*, in 2 *Str.* 890, (and also, more at large, and rightly taken, in *Fitz-Gibbon*, 193) where the declaration was amended by laying the promise as made to the executors, instead of the testator ; because the plaintiff's action would otherwise have been lost, by the statute of limitations having run upon the promise made to the testator." In *Woodroffe* v. *Williams*, (6 *Taunt.* 19. 1 *Marsh. Rep.* 419, *S. C.*) the C. P. refused, in a penal action, to alter the term of which the declaration was entitled, in order to bring it within the time limited by the statute for the commencement of the action ; and where an ejectment had been brought, and judgment recovered in 1798, and the term of the demise had since expired, the Court (1819, Trinity Term) refused to grant a rule for enlarging the term and issuing a *sci. fa.* the possession having changed, and the person who was the owner having since died. (*Doe* v. *Rendell et al.* 1 *Chit. Rep.* 535.) But an amendment of the demise was allowed, where it was laid before the title accrued, (*Doe* v. *Miller et al. id.* 536) and that too, where the ejectment was for a forfeiture for dilapidations. (*Anon. id.*) And a declaration in ejectment was amended by leaving out the word *tenements*, even after error brought. (*id.* and vid. *Peaceable* v. *Watson*, 4 *Taunt.* 16.)